No. 06-898C
Judge Christine O.C. Miller

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

GRIFFIN BROADBAND COMMUNICATIONS, INC,
and TOTAL TV OF FORT IRWIN, LLC

Plaintiffs

v.

THE UNITED STATES,

Defendant

PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S MOTION TO STRIKE

Robert K. Steinberg, Esq.
The Law Offices of Robert K. Steinberg
12304 Santa Monica Blvd., Third Floor
Los Angeles, CA 90025-2558
Tel: (310) 447-1811
Fax: (310) 447-1815

# TABLE OF CONTENTS

**Page**

A. INTRODUCTION 1

B. SUMMARY OF ARGUMENT 2

C. THE COMPLAINT STATES CAUSES OF ACTION FOR GOVERNMENT TAKING WITHOUT JUST COMPENSATION 3

1. The Government's Taking Was in its Sovereign Capacity 4

2. The Complaint Alleges Far More than Mere Breach of Contract 7

D. IF THE COURT GRANTS THE MOTION IT SHOULD ALSO GRANT LEAVE TO AMEND 9

E. CONCLUSION 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Balistreri v. Pacifica Police Dept.*
901 F.2d 696 (9th Cir. 1990) 3

*Branch v. United States*
69 F.3d 1571 (Fed. Cir. 1995) 6

*Buse Timber & Sales, Inc. v. United States*
45 Fed Cl. 258 (1999) 4

*Cahill v. Liberty Mutual Ins. Co.*
80 F.3d 336 (9th Cir. 1996) 2

*Castle v. United States*
301 F.3d 1328 (Fed. Cir. 2002) 8

*De La Cruz v. Tormey*
582 F.2d 45 (9th Cir. 1978) 3

*Gilligan v. Jamco Development Corp.*
108 F.3d 246 (9th Cir. 1997) 2

*Hearn v. R.J. Reynolds Tobacco Co.*
279 F.Supp.2d 1096 (D. Az. 2003) 3

*J & E Salvage Co. v. The United States*
36 Fed. Cl. 192 (1996) 4, 5

*Janicki Logging Co. v. United States*
36 Fed. Cl. 338 (1996) 9

*Keystone Bituminous Coal Assn. v. DeBenedictus*
480 U.S. 470 (1987) 6

*Larson v. Domestic Commerce Corp.*
337 U.S. 682 (1949) 7, 8

**TABLE OF AUTHORITIES** (cont.)

**Page**

**CASES** (cont.)

*Lucas v. South Carolina Council,*
505 U.S. 1003; 120 L. Ed. 2d 798; 112 S. Ct. 2886 (1992) 3

*Lynch v. United States*
292 U.S. 571 (1934) 3, 4

*M&J Coal Co. v. United States*
47 F.3d 1148 (Fed. Cir. 1995) 4

*Montego Bay Imports v. United States*
10 Cl. Ct. 806 (1986) 5, 6

*Torres v. United States*
15 Cl. Ct. 212 (1988) 9

*United States v. Redwood City*
640 F.2d 963 (9th Cir. 1981) 2

*United States v. Windstar*
518 U.S. 839 (1996) 8

**STATUTES**

U.S. Constitution 5th Amendment 3

28 U.S.C. Section 1491(a)(1) 6

Financial Institutions Reform, Recovery, and Enforcement Act of 1989
(FIRREA), Pub. L. No. 101-73, 103 Stat. 183. 8

**TABLE OF AUTHORITIES** (cont.)

**Page**

**MISCELLANEOUS AUTHORITIES**

Rule of U.S. Court of Federal Claims, Rule 12(b)(4) 9

Rule of U.S. Court of Federal Claims, Rule 12(b)(6) 2

Rule of U.S. Court of Federal Claims, Rule 12(e) 9

## A. INTRODUCTION

On November 25, 1991, Plaintiff Total TV of Fort Irwin, LLC ("Total TV") contracted to provide cable TV for the United States Army ("Army") at Fort Irwin. Plaintiff faithfully provided that service.[1] Plaintiff Griffin Broadband Communications, Inc. ("Griffin" or "Plaintiff") bought Total TV in 2002 and renewed the Army cable franchise for another 10 years.[2]

In October, 2003, Defendant made Plaintiffs comply with the Service Contract Act ("SCA") (41 U.S.C. 356(4)) even though cable services are exempt from compliance with wage and labor standards of the SCA. Defendant's conduct cost Plaintiffs $253,064.78 in increased salaries and other damages.[3]

Defendant also allowed satellite television on the base without requiring the vendor to comply with the same restrictions as Plaintiffs. That action violated the parties' franchise agreement wherein it states that other suppliers of similar services will not receive better contract terms than Plaintiff.[4] (¶ 9) The Army has also allowed widespread vandalism and theft of Plaintiffs' cable equipment, costing Plaintiffs $3.6 million.[5]

Defendant's RCI Project and its failure to provide funding and guidance to Plaintiffs has also damaged Plaintiffs. For example, Defendant's demolishing of 330 homes has resulted in the loss of Plaintiffs' equipment. It will require more personnel to be hired by Plaintiffs. Finally, it will require Plaintiffs to make additional capital

---

[1] Compl., ¶ 3.

[2] *Ibid.*, ¶¶ 1 and 3.

[3] *Ibid.*, ¶¶ 6-7.

[4] Art. III, Sec. 2.

[5] Compl., ¶¶ 13-14.

expenditures.[6] Defendant also failed to support the launch of the internet portion of Plaintiffs' business. This has damaged Plaintiffs in the sum of $2 million.[7] (¶ 25)

## B. SUMMARY OF ARGUMENT

A Motion to Dismiss under Rule 12(b)(6) is a disfavored motion because of the Court's liberal policy toward pleading.[8] A 12(b)(6) dismissal is proper only in extraordinary circumstances.[9] If the Complaint is unclear, rather than dismissing it, the Court should simply require a more definite statement under Rule 12(e).

In resolving a Rule 12(b)(6) motion, the court must construe the Complaint in the light most favorable to the Plaintiff and accept the factual allegations in the pleading as true.[10]

Therefore, dismissal is appropriate only where there is a lack of any cognizable legal theory.[11] A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint that would make out a claim.[12]

Here, the Complaint states a claim upon which relief can be granted. All of the above conduct by the Defendant constitutes the taking of Plaintiffs' private property without just compensation in violation of the 5th Amendment of the U.S. Constitution ("5th Amendment"). All that must be alleged to state a taking under the 5th Amendment

---

[6] *Ibid.*, ¶ 21.

[7] *Ibid.*, ¶¶ 24-25.

[8] *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

[9] *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

[10] *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).

[11] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[12] *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F.Supp.2d 1096, 1101 (D. Az. 2003).

is a compensable property interest.[13] Because the Complaint as pled, if true, would entitle the Plaintiffs to some form of legal remedy, the Motion should be denied.[14]

## C. THE COMPLAINT STATES CAUSES OF ACTION FOR GOVERNMENT TAKING WITHOUT JUST COMPENSATION

The Fifth Amendment of the U.S. Constitution commands that property not be taken without making just compensation. Valid contracts are property, whether the obligor be a private individual or the United States.[15] Therefore, rights arising out of contract are protected by the Fifth Amendment.[16]

The Motion to Strike, citing *M&J Coal Co. v. United States,*[17] correctly states that a plaintiff must prove that it owned property and that the property was taken without just compensation. To state a claim for government taking, a plaintiff must demonstrate that the Government interfered with plaintiff's use of its property.[18]

Those facts have been pled in the Complaint. First, Defendant admits that Plaintiffs have a property interest in its franchise and an expectation of profit.[19] Secondly, the Complaint clearly alleges that the Defendant's actions have caused Plaintiffs extraordinary damages.

---

[13] *Lucas v. South Carolina Council*, 505 U.S. 1003, 1027; 120 L. Ed. 2d 798; 112 S. Ct. 2886 (1992).

[14] See *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1978).

[15] *Lynch v. United States,* 292 U.S. 571, 579 (1934).

[16] *Ibid.*

[17] 47 F.3d 1148, 1154 (Fed. Cir. 1995).

[18] *Buse Timber & Sales, Inc. v. United States,* 45 Fed. Cl. 258, 262 (1999).

[19] Mot. Strike, p. 5.

**1. The Government's Taking Was in its Sovereign Capacity**

Defendant contends that if the government's taking is proprietary, not sovereign, it is not a 5th Amendment taking. In *J & E Salvage Co. v. The United States*,[20] cited in the Motion to Strike, the court stated that "when the government 'takes' property, it exercises its rights as sovereign to acquire property from the rightful owner for the public good."

Here, Plaintiffs have alleged that the taking was allegedly for the public good. The Army interfered with Plaintiffs' franchise rights ostensibly to provide television service to those at Fort Irwin. For example, Plaintiffs allege that the Army allowed satellite television to compete with cable allegedly for the benefit of the subscribers. It required compliance with the SCA allegedly for the benefit of Plaintiffs' workers.

The *J & E Salvage Co.* case is itself distinguishable from our facts. As the court there noted, the "Government was acting . . . in its proprietary capacity to dispose of certain surplus materials." [21] The *J&E Salvage* court stated that "in essence, the . . . case involved a contest between two parties over conflicting claims of ownership. On such facts it is axiomatic that there is no taking where, pursuant to a court order, the government is in possession of property to which it asserts a claim of rightful ownership."

Here, there is no contest as to who owns the cable equipment or the right to proceed under the contract without undue interference by the government. The facts alleged in the Complaint do not allege a dispute of ownership or the Army's disposal of *its* property but a taking of property owned by Plaintiffs.

The Motion to Dismiss also cited *Montego Bay Imports v. United States*.[22] There, the United States Coast Guard, using its police power, scuttled the plaintiff's vessel after

---

[20] 36 Fed. Cl. 192 (1996).

[21] *J&E Salvage* at 195.

[22] 10 Cl. Ct. 806 (1986).

it had been confiscated in a drug raid. The court stated that: "the 'police power' of the government covers actions taken in the public interest and as such is an exception to the requirement that just compensation be paid to individuals for property taken." [23] In contrast to *Montego Bay*, here, the takings by the Army did involve use of the government's "police power."

The Motion cited *Branch v. United States*,[24] which also does not apply here. There, the court held that the seizure and closure of the bank, once the bank became insolvent, did not constitute a taking.[25] Nor does *Keystone Bituminous Coal Assn. v. DeBenedictus*,[26] apply here. There, the United States Supreme Court stated that "the only question before this court is whether the mere enactment of the statutes and regulations constitutes a taking." [27]

Here, there is no allegation that the taking was made as a result of legislative action. Nor need there be to constitute a taking. The United States Claims Court has jurisdiction to render judgment upon any claim against the United States upon any express or implied contract with the United States.[28]

**2. The Complaint Alleges Far More than Mere Breach of Contract**

The Motion to Strike mischaracterizes the Complaint as merely alleging that the Army breached its franchise agreement with the Plaintiffs. While it is true that the Plaintiffs had an expectation of profit from the Army's performance under the contract.

---

[23] *Montego Bay* at 809.

[24] 69 F.3d 1571 (Fed. Cir. 1995).

[25] *Branch* at 1575.

[26] 480 U.S. 470 (1987).

[27] *Keystone* at 493.

[28] 28 U.S.C. §1491(a)(1).

The Complaint pleads far more than the loss of contract proceeds. For example, the Complaint alleges that Defendant allowed Plaintiffs' equipment to be vandalized and stolen.[29] That is a taking that is different than mere failure to comply with the contract.

The Complaint also alleges that Defendant failed to provide emergency power and granted unfair advantage to satellite television vendors.[30] Those acts cannot be remedied by an action for mere breach of the parties' franchise agreement.

The Motion cited *Larson v. Domestic Commerce Corp.*,[31] to argue that there should be no taking where the plaintiff has a contract remedy. *Larson* dealt with far different facts. There, the complaint alleged that the government had agreed to sell surplus coal to the plaintiff but failed to deliver the coal and in fact entered into other contracts to sell the coal to others. The plaintiff therefore sought an injunction prohibiting the government from selling or delivering the coal to anyone other than the plaintiff and for a declaration that the sale to the plaintiff was valid.

Here, unlike in *Larson*, there is no question regarding the validity of the contract nor a question of injunctive relief. Instead, the Army is guilty of taking the Plaintiffs' property without just compensation.

Defendant also cited *Castle v. United States*,[32] which was decided in the wake of the savings and loan crisis. Savings and loan institutions that were unable to meet strict requirements of then newly-passed legislation were seized.[33] Lenders argued that the federal statute constituted a taking without just compensation.

---

[29] Compl., ¶ 13.

[30] *Ibid.*, ¶¶ 9 and 17.

[31] 337 U.S. 682 (1949).

[32] 301 F.3d 1328 (Fed. Cir. 2002).

[33] Congress passed the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat. 183.

The *Castle* court citing from the Supreme Court's decision in *United States v. Windstar*,[34] stated "that the documents executed between government regulators and the acquiring thrifts in connection with the supervisory mergers . . . constituted enforceable agreements." [35] The court added that the property allegedly taken was the plaintiffs' contract, by way of the alleged breach that occurred upon the enactment of [legislation]."[36] Therefore, there was no "taking" of the business. Here, there was no legislation passed that specifically required failed businesses to be seized to protect consumers' financial interest as was the case in *Castle*.

This case also stands out in contrast to the facts of *Janicki Logging Co. v. United States*, cited in the Motion.[37] There, the plaintiff failed to allege that a taking because the U.S. Forest Service had not allegedly repudiated any contract obligation or otherwise impaired plaintiff's ability to enforce its rights secured under the terms of the contract. To the contrary, at all times, the Forest Service purported to act pursuant to and consistent with the terms of the contract.[38]

Finally, Defendant's citation to *Torres v. United States*,[39] is of no avail. There, the DEA seized large amounts of cash from the plaintiff during an airport search. The plaintiff there could cite no contract or law that obligated the government to return his ill-gotten gains. In contrast to *Torres*, Plaintiffs have alleged a valid contract and the obligation of the Army to adequately compensate Plaintiffs for the taking of its property.

---

[34] 518 U.S. 839 (1996).

[35] *Castle* at 1333, citing *Windstar* at 859-860.

[36] *Ibid.* at 1341.

[37] 36 Fed. Cl. 338 (1996).

[38] *Janicki* at 346.

[39] 15 Cl. Ct. 212 (1988).

## D. IF THE COURT GRANTS THE MOTION IT SHOULD ALSO GRANT LEAVE TO AMEND

In the event the Court grants the Motion to Strike, the Court should allow Plaintiffs to amend the Complaint pursuant to RCFC 12(b)(4) to add the necessary facts to come within the subject matter jurisdiction of this Court and to state a claim for relief which may be granted.

## E. CONCLUSION

The Court should deny the Motion to Strike. The Complaint states a cause of action for relief. The pleading alleges that the Defendant is guilty of taking Plaintiffs' property without just compensation in violation of the 5th Amendment.

DATED: August 1, 2007

THE LAW OFFICES OF ROBERT K. STEINBERG

By:

ROBERT K. STEINBERG
Attorneys for Plaintiffs GRIFFIN BROADBAND COMMUNICATIONS, INC, and TOTAL TV OF FORT IRWIN, LLC

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 26th day of July, 2007, the foregoing "Response to the Motion of Dismiss," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Laura Isidoro

Laura Isidoro