# In the United States Court of Federal Claims

No. 06-898C
(Filed November 19, 2007)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * | * | |
| | * | |
| **GRIFFIN BROADBAND COMMUNICATIONS, INC.; TOTAL TV OF FORT IRWIN, LLC,** | * | Motion to dismiss, RCFC 12(b)(6); takings claims pertaining to rights under a contract. |
| Plaintiffs, | * | |
| v. | * | |
| **THE UNITED STATES,** | * | |
| Defendant. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

Robert K. Steinberg, Los Angeles, CA, for plaintiff.

Joan M. Stentiford, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. Major Ian R. Iverson, U.S. Army Legal Services Agency, Arlington, VA, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER,** Judge.

This case is before the court on defendant's motion under RCFC 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief may be granted. 1/ Plaintiffs' complaint relates to plaintiffs' franchise agreement or contract with the Department of the Army to provide cable services to the Army installation at Fort Irwin, California. Plaintiffs set forth eight counts in their complaint; each count alleges that the Army's actions or

---

1/ In the introduction to its motion to dismiss, defendant also requested that the court "dismiss the [c]omplaint for lack of subject matter jurisdiction," but no argument was put forward regarding subject matter jurisdiction.

inactions relating to the contract with plaintiffs or to plaintiffs' cable equipment located at Fort Irwin constitute a takings without just compensation under the Fifth Amendment to the U.S. Constitution. Argument is deemed unnecessary.

## FACTS

The following facts are derived from plaintiffs' complaint are all assumed to be true for the purposes of this motion to dismiss. Griffin Broadband Communications, Inc. ("Griffin"), is a corporation organized under the laws of the State of Delaware. Total TV of Fort Irwin, LLC ("Total TV"), is a company organized under the laws of the State of Washington (Griffin and Total TV are referred to collectively as "plaintiffs"). A ten-year contract was entered effective November 25, 1991, between the Army and Total TV for cable television and related services to service personnel stationed around and on the base at Fort Irwin, CA. After Griffin acquired Total TV in early 2002, plaintiffs entered into a renewal contract with the Army that extended the agreement to provide services under the contract for another ten years. The Army issued to plaintiffs a recurring document on October 1, 2003, that included wage guidelines from the U.S. Department of Labor. Thereafter, in December 2005 the Army informed plaintiffs that by June 2006 they must cease operations and remove all of their property from the base.

Plaintiffs' complaint filed December 26, 2007, alleges eight counts of damages attributable to the Army's actions. In each of their eight counts, plaintiffs allege that the Army's action or failure to act constituted a Fifth Amendment taking of their property for public use without just compensation. In their first count, plaintiffs allege that the Army improperly imposed service contract labor standards, from October 1, 2003, on; plaintiffs allege that they are exempt from these standards, citing 41 U.S.C. § 356(4) (2000), as support that they are inapplicable to "any contract for the furnishing of services by radio, telephone, telegraph, or cable companies subject to the Communications Act of 1934 [47 U.S.C. § 151 *et seq*.]." Compl. filed Dec. 26, 2007, ¶ 6. In the second count, plaintiffs allege that the Army allowed satellite television providers to operate at Fort Irwin without any franchise agreement, contrary to the terms of the franchise agreement between the Army and plaintiffs. In the third count, plaintiffs allege that the Army failed to prevent theft of cable services by Army personnel, as well as physical damage to plaintiffs' property resulting from vandalism to and theft of cable equipment. In the fourth count, plaintiffs allege that the Army failed to provide emergency power for plaintiffs' electric and electronic systems and that this failure damaged those systems. In the fifth count, plaintiffs allege that the Army's failure to provide funding and guidance to plaintiff in connection with the Army's Residential Communities Initiative project had an adverse impact on plaintiffs' business at Fort Irwin. In the sixth count, plaintiffs allege that the Army failed to support plaintiffs' launch of the internet portion of their business, resulting in damages. In the seventh count, plaintiffs allege that the

Army did not comply with the original franchise agreement's provisions requiring the Army to pay costs associated with new construction. In the eighth and final count, plaintiffs allege that the Army, its personnel, and its contractors dug up, broke up, and caused damage to plaintiffs' service lines.

Defendant responds that the termination was due to the Army's closure of Fort Irwin and that plaintiff has failed to state a takings claim upon which relief can be granted.

**DISCUSSION**

I. Standard of review

1. Failure to state a claim

Rule 12(b)(6) authorizes the defendant to move, before filing a responsive pleading, for dismissal of the complaint. A motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced. The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).

The task of a federal court when reviewing the sufficiency of the complaint for failure to state a claim "is necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. In the case of Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court abrogated the holding of the Court regarding jurisdiction in Conley v. Gibson, 355 U.S. 41, 45-46, where it stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In Twombly the Court rejected a literal application of the language of Conley, stating that "the complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." 127 S. Ct. at 1973 n.14. When a complaint is properly within its jurisdiction, a court is to accept as true the facts alleged in the complaint, Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999), and entertain all reasonable inferences in favor of the non-movant, Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).

2. Takings under the Fifth Amendment

The Federal Circuit has held that determining "[w]hether a compensable taking has occurred is a question of law based on factual underpinnings." Members of Peanut Quota

Holders Ass'n, Inc. v. United States, 421 F.3d 1323, 1329 (Fed. Cir. 2005); see Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001). In evaluating whether a governmental action effects a taking of private property without just compensation, the court first must determine whether the claimant has established a cognizable property interest, *i.e.*, one protected by the Fifth Amendment. Conti v. United States, 291 F.3d 1334, 1339 (Fed. Cir. 2002). If a property right has been established, the court must then determine whether the Government has taken it in part or in whole. The traditional concept of a taking posits a physical appropriation or physical invasion of private property. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 427 (1982). The Supreme Court nonetheless has long accepted that a taking can occur when the Government regulates use of property, even in the absence of a physical taking or invasion. Regulatory takings jurisprudence recognizes that if "a regulation goes too far it will be recognized as a taking." Pa. Coal Co. v. Mahon, 260 U.S. 393, 415 (1922).

II. Failure to state a takings claim

Almost all of plaintiffs' claims against the Army implicate duties or obligations that are created solely by the terms of their agreement. Plaintiffs' numerous claims for damages appear to sound in contract, but plaintiffs have not stated any claims for breach of contract in their complaint and expressly have disavowed breach of contract claims in the course of briefing on defendant's motion. See Pls.' Br. filed July 26, 2007, at 5-6. Instead, plaintiffs allege a taking of property without just compensation in each count of their complaint. Because the complaint alleges a taking, the court has jurisdiction over such claims "because the 'just compensation' required by the Fifth Amendment has long been recognized to confer upon property owners whose property has been taken for public use the right to recover money damages from the government." Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987). 2/ However, plaintiffs' complaint fails to state a takings claim upon which relief can be granted.

The Government's alleged failure to fulfill its contract obligations would constitute a breach of contract, but is not itself a taking of property compensable under the Fifth Amendment. See United States v. Winstar Corp., 518 U.S. 839, 868-71, 907-10 (1996); see also id. at 919 (Scalia, J., concurring) ("Virtually every contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of nonperformance. The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it, – and nothing else."). A contract itself does constitute a property interest that potentially can be the subject of a taking. A contract is not considered taken,

---

2/ See note 1 supra.

however, when the Government breaches a contract, but does not deprive a contract holder of the right to seek damages for breach of that contract. Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir. 2002). As defendant argues, this situation is not comparable to the one in Lynch v. United States, 292 U.S. 571 (1935), in which Congress had "eliminated altogether a forum for advancing a breach of contract claim." Def.'s Br. filed Apr. 12, 2007, at 7. In the instant case, plaintiffs are free to pursue whatever remedy their agreement with the Army allows. No taking lies, however, because the Government has not engaged in any "legislative or administrative actions that abrogated or repudiated any contract obligation or otherwise impaired [plaintiffs'] ability to enforce [their rights] secured under the terms of the contract." Janicki Logging Co. v. United States, 36 Fed. Cl. 338, 346 (1996), aff'd 124 F.3d 226 (Fed. Cir. 1997) (table).

Several of plaintiffs' eight counts alleging takings rest on more serious misapprehensions of the law. In their first count, plaintiffs allege that the Army improperly imposed service contract labor standards, contrary to a statutory exemption. Assuming, for the purposes of a 12(b)(6) motion to dismiss, that the Army did impose these labor standards and that plaintiffs statutorily are exempt from these standards, a taking could not possibly lie. Takings can only result from government action that is authorized by law; "[t]he Tucker Act suit in the [Court of Federal Claims] is not, however, available to recover damages for unauthorized acts of government officials." Fl. Rock Indus., Inc. v. United States, 791 F.2d 893, 898 (Fed. Cir. 1986). Unauthorized actions by government officials might be remedied by a cause of action arising in tort or under a remedy afforded by civil rights statutes, but necessarily cannot be a taking.

In their third count, plaintiffs allege that the Army failed to prevent theft of cable services by Army personnel, as well as physical damage to plaintiffs' property resulting from vandalism to and theft of cable equipment. A necessary component of any takings claim is that the Government actually took property, whether by physical invasion or regulatory action; the Government's failure to prevent Army personnel and families (acting in their private capacity, not as agents of the Government) properly is characterized as inaction, and so cannot constitute a taking. See Alves v. United States, 133 F.3d 1454, 1456 (Fed. Cir. 1998) (holding inaction of Bureau of Land Management in abating private trespassers does not constitute taking). Whatever duties or obligations the Army had to prevent theft or vandalism of plaintiffs' property arose out of the franchise agreement; while a failure to fulfill those obligations may be a breach of that agreement, it is not a taking.

The remainder of the counts in plaintiffs' complaint address aspects of the franchise agreement that implicate, if anything, claims for breach of contract action, but do not constitute takings. Because plaintiffs have failed to state a takings claim upon which relief

can be granted, defendant is entitled to grant of its motion to dismiss pursuant to RCFC 12(b)(6). 3/

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss plaintiffs' complaint for failure to state a claim is granted, and the Clerk of the Court shall dismiss the complaint.

**IT IS SO ORDERED.**

No costs.

s/ Christine O.C. Miller

__________________________________

**Christine Odell Cook Miller**
Judge

---

3/ In their opposition to defendant's motion to dismiss, plaintiffs requested that "[i]n the event the Court grants the Motion [to dismiss], the Court . . . allow Plaintiffs to amend the Complaint . . . to add the necessary facts . . . to state a claim for relief which may be granted." Pls.' Br. filed July 26, 2007, at 8. RCFC 15(a), analogous to rule 15(a) of the Federal Rules of Civil Procedure, allows parties to amend their pleadings "once as a matter of course at any time before a responsive pleading is served." RCFC 15(a). "Because a Rule 12(b)(6) motion to dismiss is not a 'responsive pleading,' the filing of such a motion does not extinguish a party's right to amend as a matter of course." McKinney v. Irving Indep. Sch. Dist., 309 F.3d 308, 314 (5th Cir. 2002). Plaintiffs had the opportunity to amend their complaint as a matter of right, without leave of the court, but did not do so. Moreover, plaintiffs have not alerted the court or defendant as to the nature or possible content of any proposed amendments to their complaint anywhere in their briefing. Their request for leave to amend the complaint is denied. See id. (trial court did not abuse discretion in denying leave to amend complaint under similar circumstances). Plaintiffs may file a motion for reconsideration pursuant to RCFC 59, which allows for a "reconsideration . . . to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). Such a motion for reconsideration "shall be filed no later than 10 days after the entry of the judgment." RCFC 59(b). If plaintiffs have facts that would support an amendment, if an amendment would not be futile, and if defendant does not succeed in opposing reconsideration on the ground that plaintiffs had no excuse for not bringing these facts to the court's attention in their opposition, plaintiffs may attempt to replead.